IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-2256-CM |
| | ) | |
| MULTISERVICE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I.  Introduction

This is a declaratory judgment proceeding brought by an insurance company against its insured.   The plaintiff, Continental Casualty Company ("Continental"), seeks a determination that it is not required to indemnify the defendant, MultiService Corporation ("MultiService"), for the defense and settlement of a lawsuit filed by Comdata Network, Inc. ("Comdata").   MultiService has asserted several counterclaims in this case, including indemnity, breach of contract, and fraud.

The case is now before the court on MultiService's motion to compel production of documents **(doc. 51)**, Continental's motion for a protective order **(doc. 56)**, and Continental's cross-motion to compel **(doc. 63)**.   The instant motions have been fully briefed (*see* docs. 52, 57, 63, 66, 68, 72, & 78).   As explained below, all three motions will be denied.

O:\M & O\06-2256-CM-51, 56, 63.wpd

II.   Underlying Lawsuit and Procedural History

In December 2004, Comdata filed suit in the U.S. District Court for the Middle District of Tennessee against MultiService and other companies, alleging monopolization in violation of the Sherman Antitrust Act and tortious interference with a business relationship (the "Comdata action").  MultiService sought defense and indemnity under the professional liability coverage provisions of a directors and officers liability insurance policy Continental had issued to MultiService (the "D & O policy").  Under a reservation of rights, Continental agreed to defend MultiService on the tortious interference claim.  However, based on an exclusion in the D & O policy, Continental completely denied coverage on the Sherman Act claim.  Continental agreed to the retention of the law firm of Warden, Triplett, & Grier ("WTG") to defend MultiService in the Comdata action, conditioned on WTG's billing rates being agreeable to Continental, and further conditioned on compliance with Continental's standard defense counsel guidelines.

In this declaratory judgment proceeding, which was filed on June 20, 2006, Continental has alleged that MultiService and WTG failed to keep Continental apprised of relevant developments in the Comdata action.  For example, the aviation division of MultiService, which is the division involved in the Comdata action, was sold to U.S. Bank in February 2005.  Continental claims it was not informed of this sale until November 2005.  Similarly, Continental claims it was not aware until recently of the so-called joint defense agreement that had been entered into by MultiService and U.S. Bank on February 28, 2005.

In the joint defense agreement, MultiService and U.S. Bank agreed to share liability for the antitrust claims on a "50-50" basis.  Continental also claims it did not receive timely invoices from WTG.

During negotiations in the Comdata action, Continental offered to contribute to a settlement, provided MultiService would contribute an equal amount.  Ultimately though, MultiService settled the Comdata action for $1 million, and Continental now alleges that this settlement was reached without its prior consent in violation of the D & O policy.  MultiService maintains the $1 million was in settlement of only the tortious interference claim and that the antitrust claim was settled by U.S. Bank in the form of business concessions.

On August 22, 2006, MultiService sent Continental a letter with a list of documents MultiService believed were relevant to the issues in this declaratory judgment proceeding, and which MultiService anticipated Continental would produce as initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  Continental served its initial disclosures and a privilege log on October 25, 2006.  Continental and MultiService then entered settlement negotiations and informally tolled discovery.  At some point, presumably because of the then-upcoming discovery deadline, they agreed to resume discovery activities.

During settlement discussions, Continental requested an opportunity to inspect WTG's files on the Comdata action pursuant to the so-called audit right contained in Continental's law firm billing guidelines.  The parties agreed to allow Continental to review WTG's file

under certain conditions in May 2007.  Continental was not allowed to copy any documents, and the parties agreed MultiService was not waiving any privileges by granting the review. The parties' written agreement states "future access to the materials will only be provided through proper discovery channels or order of the Court."  The inspection was not to be used in "any pleadings, arguments or statements of counsel or witnesses in any litigation."  It was during this inspection of MultiService's underlying defense file that Continental discovered the existence of the joint defense agreement between MultiService and U.S. Bank.

On August 9, 2007, MultiService served a notice of deposition duces tecum for Joy Sable, a Continental employee who adjusted the Comdata claim.  On August 17, 2007, MultiService served its first request for the production of documents.  It appears that the documents MultiService anticipated would be included with Continental's initial disclosures (which, as earlier indicated, were served on October 25, 2006), the documents requested in Ms. Sable's deposition notice, and the documents requested in MultiService's first request for the production of document, are all substantially the same.  At issue are Continental's claims file concerning its investigation and evaluation of the Comdata action, attorney opinion letters obtained by Continental on the issue of coverage for the Comdata action, correspondence among Continental's employees discussing the Comdata action, claims manuals dealing with the manner in which Continental adjusts claims under D & O policies, and documents prepared in claims committee meetings which considered the Comdata action.

MultiService believes that all of the documents at issue, except for the claims manuals, are contained within Continental's claims file from the Comdata action.

On August 23, 2007, Continental sent MultiService an e-mail with objections to the notice of deposition duces tecum for Ms. Sable. Continental asserted that various documents were protected by the attorney-client privilege, work product doctrine, or as confidential, proprietary business information, and that MultiService's requests were vague, overly broad, ambiguous, or irrelevant. MultiService has stated that, as part of these objections, Continental adopted the privilege log submitted with Continental's initial disclosures.[1]

Ms. Sable was deposed on August 27, 2007. In connection with her deposition, Continental provided additional documents that were initially withheld, such as a "new loss report," a draft reservation of rights letter, and certain correspondence between members of the claims department. Ms. Sable testified that the claim file for the Comdata action in Tennessee was in her possession before the filing of this declaratory judgment action in Kansas. At some point before Ms. Sable's deposition, she turned the claim file over to Continental's current counsel. Ms. Sable stated she was not aware of any claims manuals relating to the adjustment of claims under D & O policies or any other requested manuals. During her deposition, Ms. Sable declined to answer several questions regarding

---

[1]MultiService cites to a September 25, 2007 letter from Continental's counsel for this assertion, but no such letter is attached to MultiService's motion to compel. Although Continental's August 23, 2007 letter does not specifically refer to its privilege log, it states that Continental "has produced all relevant, non-privileged documents responsive to [several] Request[s] in connection with its Rule 26 Disclosures."

communications between Continental's employees, the reserve established by Continental, the advice of Continental's claim legal exposure management ("CLEM") department, and opinion letters pertaining to MultiService's liability received from Continental's in-house counsel.

On September 27 and 28, 2007, about a month after Ms. Sable's deposition, Continental performed a second inspection of WTG's files in Overland Park, Kansas. During this inspection, MultiService allowed Continental to copy documents. MultiService produced a privilege log identifying more than 10,000 documents that had been withheld from the document production and inspection session, based upon the attorney-client privilege, work product doctrine, or joint defense privilege.

On October 4, 2007, MultiService served Continental with a notice of deposition duces tecum for Erin Finn, an attorney in Continental's CLEM department. The document request portion of the notice requested substantially the same documents MultiService anticipated as part of Continental's initial disclosures, requested in association with Ms. Sable's deposition, and requested in MultiService's first request for the production of documents. This deposition was to occur on October 23, 2007, but has essentially been automatically stayed pending the court's ruling on Continental's motion for a protective order, which motion was filed on October 15, 2007.[2]

---

[2] *See* D. Kan. Rule 26.2.

MultiService filed a motion to compel production of documents on October 5, 2007. On October 9, 2007, the court summarily denied that motion without prejudice for reassertion in compliance with the "meet and confer" requirements of D. Kan. Rule 37.2 (doc. 48). MultiService filed the instant amended motion to compel on October 10, 2007.  That same day, Continental responded to MultiService's first request for production of documents.

On October 18 and 19, 2007, Continental deposed MultiService's president, Mark O'Connell, and J. Michael Grier of WTG, MultiService's defense counsel in the Comdata action.  Mr. O'Connell testified that U.S. Bank and MultiService agreed to share antitrust liability on a "50-50" basis.  Counsel for Mr. O'Connell and Mr. Grier objected to inquiries into the content of the joint defense agreement.

On October 29, 2007, as part of Continental's response to MultiService's amended motion to compel production of documents, Continental purported to make a cross-motion to compel.

After several extensions, the current discovery deadline is February 1, 2008.

### III.   Discussion and Analysis

A.    MultiService's Motion to Compel

MultiService asks the court to compel Continental to produce its complete, unedited, and unredacted claim file from the Comdata action, together with all claims manuals pertaining to the adjustment of claims under D & O policies.  Because MultiService's original motion to compel was denied by the court without prejudice, the court will analyze

timing issues with the date the original motion was filed, October 5, 2007.  D. Kan. Rule 37.1(b) provides:

> Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 <u>shall</u> be filed and served within 30 days of the default or service of the response, answer or objection which is the subject of the motion, <u>unless</u> the time for filing of such motion is extended for good cause shown.  Otherwise the objection to default, response, answer, or objection <u>shall</u> be waived (emphasis added).

Neither Continental nor MultiService has addressed the timeliness of the instant motion in their briefs for this motion.  However, in Continental's reply brief in support of its motion for a protective order (doc. 68), Continental argues that MultiService's motion to compel is untimely under D. Kan. Rule 37.1(b).

The rationale of D. Kan. Rule 37.1(b) is to ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation.  The rule clearly reflects the triggering event is "the default or service of the response, answer, or objection which is the subject of the motion."  The courts in this district consistently—and correctly—have construed and applied the 30-day time period under D. Kan. Rule 37.1(b) as beginning when specific information first leading to a dispute is discovered.[3]  Any other construction of the rule would allow a virtually indefinite extension of the deadline so long as counsel purported

---

[3] *See, e.g.*, *Geer v. Cox*, No. 01-2583, 2003 WL 21254731, at *1-*2 (D. Kan. May 21, 2003); *Haggard v. Standard Register Co.*, No. 01-2513, 2003 WL 365955, at *2 (D. Kan. Jan. 21, 2003).

to continue engaging in an effort to secure the information informally from the opposing party.

Although not entirely clear, it seems to the court that MultiService is seeking to compel production of the above-described documents because Continental failed to make disclosures required by Fed. R. Civ. P. 26(a)(1), and also because Continental failed to adequately respond to the document request accompanying Ms. Sable's deposition. As earlier indicated, Continental served its Rule 26(a)(1) disclosures and accompanying privilege log on October 25, 2006, and the deposition duces tecum of Ms. Sable was conducted on August 27, 2007. Thus, under D. Kan. Rule 37.1(b), absent an extension, MultiService was required to file a motion to compel relating to the purportedly deficient Rule 26(a)(1) disclosures by November 24, 2006, and relating to the deposition duces tecum by September 26, 2007. MultiService did neither. The original motion to compel was not filed until October 5, 2007.

Clearly, MultiService failed to file a timely motion to compel with regard to Continental's Rule 26(a)(1) disclosures. Indeed, the motion to compel in this regard was filed more than ten months late. As relates to the production of documents associated with Ms. Sable's deposition, the motion was late, although only by nine days.

Further, it bears mentioning that MultiService never timely requested an extension of time to file a motion to compel. If MultiService had filed a motion asking for an extension of the 30-day deadline before it expired, informing the court about the specific nature of the

dispute and the approximate amount of time the parties expected it would take to exhaust their attempts to resolve the dispute through the meet-and-confer process, presumably the court would have granted MultiService an extension to file its motion to compel, as specifically contemplated by Fed. R. Civ. P. 6(b)(1) and D. Kan. Rule 37.1(b).  That is fairly routine practice in this district, and has been so for many years.  Even if MultiService had filed a motion for leave to file a motion to compel out of time shortly after the above-stated deadlines, and if such a motion had contained the requisite information to meet MultiService's burden of establishing "excusable neglect" as required by Fed. R. Civ. P. 6(b)(1)(B), the court presumably would have granted the motion.  In short, MultiService did nothing to protect its right to challenge the merits of Continental's responses to the deposition duces tecum or Rule 26(a)(1) disclosures.  MultiService's motion to compel is therefore denied to the extent it seeks to compel further responses to the deposition duces tecum and Rule 26(a)(1) disclosures.

The memorandum in support of the amended motion to compel states MultiService had not received Continental's responses to MultiService's first request for production of documents as of the date of the filing of the motion.  MultiService did attach a copy of the request for production, as required by D. Kan. Rule 37.1.  However, MultiService did not argue, let alone mention, that Continental failed to timely respond.  MultiService served its first request for the production of documents on August 17, 2007.  Pursuant to Fed. R. Civ. P. 34(b), Continental had 30 days to respond to the request for production, which would have

been September 17, 2007.  Although Continental served its discovery responses on October 10, 2007, the same day MultiService filed its amended motion to compel, MultiService did not attach a copy of these responses to the reply brief MultiService filed on November 1, 2007 (doc. 66), and only may have mentioned the responses with regard to the claims manuals.  MultiService did attach Continental's objections to the subject discovery as part of its response to Continental's motion for a protective order, but stated simply that Continental "provided only general and specific objections to each request and produced no documents other than a heavily redacted claims file."[4]  The above-described statement, which was made in opposition to another motion, obviously does not provide the court a sufficient record to analyze Continental's responses.  For reasons that should be obvious, the court declines to simply speculate or assume that Continental's responses to MultiService's requests for production are substantially the same as its responses to Ms. Sable's deposition duces tecum and its Rule 26(a)(1) disclosures, even though that likely is the case.  Therefore, MultiService's motion to compel, to the extent it concerns Continental's responses and objection to MultiService's first request for production, is denied.

B.      Continental's Motion for a Protective Order

        Continental's motion for a protective order requests that the deposition of its in-house lawyer, Erin Finn, which has been noticed by MultiService, not be allowed to proceed at all. At a minimum, Continental requests the scope of the deposition be limited and that the items

---

[4]Doc. 57.

in the duces tecum portion of the deposition notice be limited to those that are non-privileged and relevant.

The decision whether to enter a protective order is within the sound discretion of the court.[5]  Fed. R. Civ. P. 26(c) provides that the court, upon a showing of good cause, may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  As the party seeking a protective order, Continental has the burden to show good cause for it.[6]  "To establish good cause, the party must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[7]

Continental purports to show good cause for entry of a protective order by claiming that communications by Ms. Finn are protected by the attorney-client privilege and/or work product privilege and that any non-privileged information already has been provided to MultiService through other discovery.  Continental concludes that therefore the only conceivable reason MultiService seeks to depose Ms. Finn is to annoy, harass, or cause unnecessary expense.

---

[5] *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995).

[6] *See Bryan v. Eichenwald*, 191 F.R.D. 650, 651 (D. Kan. 2000) (citing *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[7] *Day v. Sebelius*, 227 F.R.D. 668, 677 (D. Kan. 2005).

"A party may obtain a protective order only if it demonstrates that the basis for the protective order falls within one of the categories enumerated in Rule 26(c)."[8]  A party may, of course, object to providing discovery on the basis that it is privileged or not relevant, but such objections are not a basis upon which the court may enter a protective order.[9]  The court rules on the validity of such objections in the context of a motion to compel discovery.[10]  Continental's conclusory statement that because Ms. Finn only possesses privileged information, MultiService's reason for the deposition must be only to annoy, harass, or cause Continental unnecessary expense, fails to show good cause for the entry of a protective order.

Continental also argues that MultiService fails to satisfy the test for deposing opposing counsel, as articulated in *Simmons Foods, Inc. v. Willis*.[11]  First of all, it is important to keep in mind that, before setting forth the  test, the court stated:

> "An attorney, even an attorney for a party to the suit, is subject to being deposed." *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (quoting *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994)).  "Courts do not favor thwarting a deposition." *Id.* (citing *Leighr v. Beverly Enterprises-Kansas Inc.*, 164 F.R.D. 550, 552 (D. Kan. 1996)).  Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition.  *Id.* (citation omitted.)  A request to take the deposition of an attorney for a party may, however, constitute an

---

[8] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003).

[9] *Id.* at 535.

[10] *Id.*

[11] 191 F.R.D. 625 (D. Kan. 2000).

extraordinary circumstance justifying departure from the normal rule. *Id.* "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Id.* (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).[12]

Initially, the court must first determine whether Ms. Finn, an attorney in Continental's CLEM department, should be treated as opposing counsel for purposes of applying the *Simmons* test.[13]   One court treated an in-house attorney as opposing counsel for the test because, based on the information before it, it could only conclude he acted as a legal advisor and was responsible for managing the litigation.[14]   The fact that he was not counsel of record was not determinative and the court did not find he acted in an administrative role, as opposed to a legal advisory one.[15]   Continental's reliance on another case for support that in-house counsel at insurance companies qualify as opposing counsel is misplaced.  The motion at issue in *Phoenix Mutual Life Insurance Co. v. College Court* was granted as unopposed.[16] Further, although the court did briefly address the merits of the motion, it did not address

---

[12]*Id.* at 630.

[13]*See Epling v. UCB Films, Inc.*, 204 F.R.D. 691, 693 (D. Kan. 2001).

[14]*Id.* at 694-95.

[15]*Id.* at 693-94.

[16]No. 92-2254, 1993 WL 841191, at *1 (D. Kan. May 17, 1993).

why the in-house attorney should be treated as opposing counsel, let alone state any facts regarding the attorney's role in the litigation.[17]

Continental's motion for a protective order contains several generalized statements regarding Ms. Finn's position at Continental and her role in the underlying lawsuit. Conspicuously, *none* of these statements are supported by an affidavit by Ms. Finn or any other sworn testimony. The court declines to simply rely on Continental's counsel's unsworn representations in the motion. Given the lack of specific, sworn information on Ms. Finn's role, the court cannot determine whether she should even be considered opposing counsel for purposes of the *Simmons* test.

But even if Ms. Finn were to be treated as opposing counsel, there is insufficient information before the court to determine that Ms. Finn should not be deposed under the *Simmons* test. That is, in order to depose opposing counsel, the test requires "the information sought [be] relevant and nonprivileged."[18]

Under Rule 501 of the Federal Rules of Evidence, privileges are determined under state law when state law supplies the rule of decision for a claim in a civil proceeding. Here, the parties assert claims based on state law and the court exercises diversity jurisdiction. Therefore, the court applies Kansas law to analyze questions of privilege.[19] K.S.A. § 60-426

---

[17]*Id.* at *1-*2.

[18]*Simmons*, 191 F.R.D. at 630.

[19]*See Ellibee v. Hazlett*, No. 03-3023, 2006 WL 1360488, at *4 (D. Kan. May 16, 2006).

governs the attorney-client privilege under Kansas law.  The general rule is "(1) [w]here legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived."[20]   The unsworn statements in Continental's motion regarding Ms. Finn's role do not provide the court sufficient information to determine whether all, or even most or some, of the communications MultiService seeks are privileged.

Because Continental failed to show good cause for the entry of a protective order and failed to provide sworn testimony as to Ms. Finn's role in the underlying litigation, the court denies Continental's motion for a protective order preventing Ms. Finn's deposition from taking place.  The court also denies the motion to the extent it seeks to limit the scope of Ms. Finn's deposition and the duces tecum portion of the deposition notice.

C.    Continental's Cross-Motion to Compel Production of Documents

As noted above, Continental filed a memorandum in opposition to MultiService's amended motion to compel and in support of a purported cross-motion to compel.  But Continental never filed an actual cross-motion to compel discovery.  Regardless of the title of the document filed, more problematic, Continental failed to "state the relief sought," as

---

[20]*State v. Maxwell*, 10 Kan. App. 2d 62, 63, 691 P.2d 1316, 1319 (1984).

required by Fed. R. Civ. P. 7(b)(1)(C).  Continental merely requests "this Court enter an Order . . . granting Continental's Cross-Motion to Compel."[21]

Continental has muddled the record, making it quite difficult to determine whether the "cross-motion to compel" seeks the production of MultiService's underlying defense file, excluding communications with MultiService's coverage counsel, and the joint defense agreement.  These are the documents MultiService identified on a privilege log and withheld from Continental's second informal inspection of MultiService's underlying defense file at WTG.

Fed. R. Civ. P. 37(a) governs motions for orders compelling discovery.  "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a deponent fails to answer a question asked, a corporation fails to make a required designation, a party fails to answer an interrogatory submitted, or "a party fails to respond that inspection will be permitted — or fails to permit inspection — *as requested under Rule 34* (emphasis added)."[22]  Here, Continental appears to be seeking an order compelling an inspection or production of documents, which MultiService did not produce for inspection.  Significantly, however, Continental never formally requested inspection or production of the documents under Fed. R. Civ. P. 34, which would have required Continental to serve specific requests on MultiService.

---

[21]Doc. 63.

[22]Fed. R. Civ. P. 37(a)(3)(B).

Informal discovery has its place, and obviously it can be very efficient and useful in some situations. But informal discovery has drawbacks and limitations. Besides Fed. R. Civ. P. 37(a)'s clear language as to when a motion to compel a discovery response may be made, other judges in the District of Kansas have refused to compel a party to respond to informal discovery requests.[23] "The Federal Rules of Civil Procedure provide necessary boundaries and requirements for formal discovery. Parties must comply with such requirements in order to resort to the provisions of Fed. R. Civ. P. 37, governing motions to compel. Informal requests for production lie outside the boundaries of the discovery rules."[24] The court therefore declines to compel MultiService to fully respond to Continental's informal discovery request and denies Continental's cross-motion to compel.

## V.   Conclusion and Order

The parties in this case are represented by good lawyers. At the risk of seeming uncharitable, the court observes that *both* parties have made somewhat of a mess of discovery in this case, at least in the sense that they have not created a record in a technically sufficient manner. Moreover, the court is very troubled by the fact that, in resisting discovery, it appears both parties have staked out positions which are very tenuous at best, i.e., positions which would be extremely difficult to sustain in light of this district's well-developed

---

[23]*Alexander v. Certified Master Builders Corp.*, No. 96-2515, 1998 WL 303497, at *2 (D. Kan. June 4, 1998); *Sithon Maritime Co. v. Holiday Mansion*, No. 96-2262, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998).

[24]*Sithon Maritime Co.*, 1998 WL 182785, at *2.

precedent on the parameters of discovery.  Because of the deficient record presented, the court has decided the pending motions on bases more technical than substantive.  As earlier indicated, discovery currently is set to close on February 1, 2008.  Should either of the parties be contemplating a motion to extend discovery, they should bear in mind that the sort of bogus discovery objections that have been asserted to date are highly likely to be overruled, with substantial attorneys' fees to be imposed by way of sanctions.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.      MultiService's amended motion to compel production of documents **(doc. 51)** is denied.

2.      Continental's motion for a protective order **(doc. 56)** is denied.

3.      Continental's cross-motion to compel **(doc. 63)** is denied.

Dated this 7th day of January, 2008, at Kansas City, Kansas.

                                                    s/James P. O'Hara
                                                    James P. O'Hara
                                                    U.S. Magistrate Judge