IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CONTINENTAL CASUALTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-2256-CM |
| **MULTISERVICE CORPORATION,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Continental Casualty Company ("Continental") brings this action for declaratory judgment against defendant MultiService Corporation ("MultiService"). This matter is before the court on Defendant MultiService Corporation's Second Motion for Partial Summary Judgment (Doc. 139) and Plaintiff Continental Casualty Company's Cross-Motion for Partial Summary Judgment with Respect to Estoppel (Doc. 158). The court also addresses Defendant's Motion to Limit Testimony of Plaintiff's Rebuttal Expert Michael Conroy (Doc. 127).

**I.     Factual Background**[1]

Until February 2005, defendant MultiService provided credit card processing services for the aviation industry. Continental issued an insurance policy to MultiService for the period of August 1, 2004 through May 2, 2005 ("Policy"). The Policy had a $3 million per claim and in the aggregate liability limit and a $35,000 retention. On December 1, 2004, Comdata Network, Inc. ("Comdata") filed suit against MultiService and PerfectStop Partners, L.P. ("Comdata Lawsuit"). In the Comdata

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

Lawsuit, Comdata alleged a tortious interference claim and antitrust claims against MultiService. In December 2004, MultiService provided Continental with a written notice of the Comdata Lawsuit and requested coverage under the Policy. On December 28, 2004, Continental sent MultiService a reservation of rights letter setting forth provisions in the Policy that it believed might limit or preclude coverage for the Comdata Lawsuit. Under the section entitled "Entity Liability Coverage Part," the letter stated, "Because Multi Service Corporation, is the Named Company and a defendant named in the complaint, coverage will be afforded for Multi Service Corporation, for losses resulting from this claim subject to the following disclaimers and continuing reservation of rights." The letter referenced sections II.(3) and III.1.(i)(j)(1) and (n) of the Policy. Immediately following those sections, the letter stated, "We cite the above-referenced exclusions in light of plaintiff's allegation of tort[ious] interference with business relationships." The letter then referenced "Endorsement Number 6, titled 'Entity Liability Coverage Part Exclusions'" and quoted Exclusion (p). Exclusion (p) amends Section III of the Policy at subsection 1—Exclusions Applicable to all Loss—by adding the following language:

> p.  based upon, directly or indirectly arising out of, or in any way involving:
>
> (1) charges of price fixing, restraint of trade, monopolization or unfair trade; or
>
> (2) any actual or alleged violation of:
>
> (a) the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade; or
>
> (b) any rules or regulations promulgated under or in connection with the above statutes; or

> > (c) any similar provision of any state, federal or local statutory law or common law;

After referencing Exclusion (p), the letter stated, "We cite the above exclusion because in accordance with this exclusion, there will be no coverage for the charges related to violations of the Sherman Act." The letter cited other policy provisions—sections VI.(1); VI.(3); and XI. of the General Terms & Conditions—presumably in reference to the tortious interference claim, as Continental had already denied coverage for the antitrust claims.

On December 5, 2005, MultiService asked Continental to settle the tortious interference claim within the $3 million policy limits. In February 2006, MultiService informed Joy Sable, Continental's claims attorney, that Comdata had made a settlement demand of $1 million to settle the tortious interference claim. On February 28, 2006, Continental offered, in writing, to pay 50% of any settlement up to $1 million. On March 20, 2006, MultiService's counsel forwarded Ms. Sable a draft settlement agreement, in which MultiService would be dismissed with prejudice from the Comdata litigation in exchange for $1 million. In the forwarding email, MultiService requested authority to settle the matter up to $1 million. On March 29, 2006, Continental offered to pay 50% of any settlement up to $500,000 subject to the right to dispute coverage. Subsequently, Continental offered to pay $600,000 for a full release of all issues between it and MultiService.

The Comdata Lawsuit was settled on June 12, 2006. The settlement included a $1 million payment from MultiService to Comdata. Continental and MutliService dispute whether the $1 million settled only the tortious interference claim or whether it also applied toward the settlement of the antitrust claims.

**II.     Standards for Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.    Discussion**[2]

MultiService raises two issues: (1) whether Continental is estopped from asserting Exclusion (p) and (2) whether MultiService violated the Policy's cooperation clause. In response to MultiService's motion for summary judgment, Continental filed a response and cross-motion for summary judgment. The response/motion was filed on February 17, 2009—almost three months after the November 24, 2008 dispositive motion deadline. Because the cross-motion for summary judgment was filed out of time, the court denies the motion as untimely. *See McCormick v. Hadl*, No. 03-2630-KHV, 2005 WL 1799260, at *1 (D. Kan. June 28, 2005) (overruling plaintiff's summary judgment motion as untimely because plaintiff failed to comply with the dispositive motion deadline, filing the motion two months late). But the court will consider the pleading as a response to MultiService's motion for summary judgment.

   **A.     *Estoppel***

MultiService requests that the court find Continental is estopped from asserting Exclusion (p) as a defense to MultiService's claim for indemnity for settling the underlying Comdata action. MultiService argues that Continental should be estopped from relying on Exclusion (p) because

---

[2] The parties agree that Kansas substantive law applies to this matter.

-4-

Continental's December 2004 reservation of rights letter did not specifically assert Exclusion (p) as a defense to the tortious interference claim. In response, Continental argues that (1) estoppel cannot apply to Continental's Exclusion (p) defense because it would create coverage under the policy where none previously existed; and (2) even if estoppel does apply, MultiService cannot establish the required elements.

"Equitable estoppel exists when a party by its acts, representations, admissions, or silence induces another party to believe certain facts existed upon which the other party detrimentally relies." *Johnson v. United Excel Corp.*, No. 99,428, 2009 WL 248113, at *5 (Kan. Ct. App. Jan. 30, 2009) (citing *Turon State Bank v. Bozarth*, 684 P.2d 419, Syl. ¶ 2 (Kan. 1984)). Before addressing the elements of estoppel, the court must consider whether estoppel applies in this case. Continental maintains that under Kansas law estoppel cannot be applied to expand the terms of an insurance policy. Although this proposition has been stated by the Kansas Court of Appeals, the Court of Appeals recently noted that "[the Kansas] Supreme Court apparently has never implemented this rule" and, in fact, applied estoppel to expand an insurance policy's coverage in *Heinson v. Porter*, 772 P.2d 778 (Kan. 1989). *Johnson*, 2009 WL 248113, at *8 (citing *Heinson*, 772 P.2d at 783, *overruled on other grounds Glenn v. Fleming*, 799 P.2d 79, Syl. ¶ 5 (Kan. 1990)); *but see Long v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 1219, 1224 (D. Kan. 2006) ("Kansas law prevents the use of the doctrine of estoppel to expand coverage under an insurance agreement beyond explicit exclusions.") (citing *Hillman v. Colonial Penn Ins. Co.*, 869 P.2d 248 (Kan. Ct. App. 1994)).

In *Heinson*, the homeowner's policy expressly excluded coverage for injuries or damages arising from business pursuits. 772 P.2d at 672. After concluding that the insured's in-home day care operation was a business endeavor, the court ruled that the insurer was estopped from denying

coverage under the policy because prior to issuing the policy the insurer knew the insured was operating a day care in her home and after the loss the insurer issued a series of conflicting reservation of rights letters. *Id.* at 673. Additionally, the insurer's agent told the insured that the policy would cover the business; the insured's application stated she was operating a business; the insurer had some concern over the business operation but did not express its concern to the insured; and the policy did not expressly exclude the day care activity. *Id.* The court found that estoppel was appropriate under the totality of the circumstances. *Id.*

The Kansas Court of Appeals distinguished *Heinson* in *Russell v. Farmers Ins. Co.*, 163 P.3d 1266 (Kan. Ct. App. 2007). In *Russell*, the insurance policy specifically contemplated exclusion of the incident at issue, but the insurer failed to identify lack of coverage in its initial denial of claim letter. *Id.* at 1268. The *Russell* court explained the difference between policy conditions, which may be waived, and policy exclusions, which may not be waived. *Id.* at 1269. Finding that the policy provision at issue was an exclusion, the court distinguished *Heinson* on the grounds that "*Heinson* involved an insurer's affirmative representations and actions regarding coverage where the policy did not explicitly exclude the incident at issue." *Russell*, 163 P.3d at 1269. Recently, the Kansas Court of Appeals dealt with the issue again in *Johnson*, where estoppel was based on an incorrectly issued certificate of insurance. 2009 WL 248113, at *8. The court noted that Kansas courts, and the majority of courts, hold that waiver and estoppel cannot be used to expand coverage of an insurance policy. *Id.* at *7–8. Although recognizing the general rule, the court analyzed the case under *Heinson* and *Russell*. *Id.* The court likened the case to *Heinson* because the policy exclusion at issue was no more explicit than the exclusion applied in *Heinson*, and distinguished it from *Russell* because the case involved more than just the failure to identify lack of coverage. *Id.* at *8 (finding estoppel could apply but was inappropriate because the element

-6-

of rightful reliance was not established).

Here, as in *Russell*, the policy provision, Exclusion (p), specifically excludes the types of claims Continental alleges are at issue—claims based upon, directly or indirectly arising out of, or in any way involving charges of monopolization or violations of the Sherman Act. Furthermore, estoppel is based upon Continental's mere failure to identify lack of coverage in its December 2004 reservation of rights letter and not upon affirmative actions implying coverage for antitrust related claims. As the Tenth Circuit explained in *Hennes Erecting Co. v. Nat'l Union Fire Ins. Co.*, "[w]hile timely and complete disclosure of the reasons for denying a claim would certainly have been preferable, waiver and estoppel cannot be used in these circumstances to increase the insurer's risk beyond the terms of the policy." 813 F.2d 1074, 1080 (10th Cir. 1987) (holding insurer's failure to list an exclusion when rejecting a claim does not operate to eliminate the exclusion from the policy). To deny Continental the right to assert Exclusion (p) could, potentially, have the effect of creating coverage for claims excluded by the policy. *See, e.g., Aks v. Southgate Trust Co.*, 844 F. Supp. 650, 659–60 (D. Kan. 1994) (recognizing that denying the insurer the right to assert exclusions simply because it failed to mention the exclusions when it denied liability would potentially have the effect of expanding the clear scope of the policy). Accordingly, MultiService's motion based on estoppel is denied.

### B. *The Policy's Cooperation Clause*

Continental asserts that it has no duty to indemnify MultiService for the $1 million settlement payment made in connection with the Comdata lawsuit because MultiService breached the Policy's cooperation clause. In its motion for summary judgment, MultiService asks the court to hold that it did not violate the Policy's cooperation clause.

"The purpose of cooperation clauses is to protect the insurer's interest and prevent collusion

between the insured and the injured person." *Dillon Cos., Inc. v. Royal Indem. Co.*, 369 F. Supp. 2d 1277, 1290 (D. Kan. 2005) (quoting *Watson v. Jones*, 610 P.2d 619, 624 (Kan. 1980)). The clause should be interpreted according to the common and ordinary meanings of it terms, and not under a strained or technical construction. *Id.* Under Kansas law, even if the insured breaches the cooperation clause, the insurer's ability to defend must have been substantially prejudiced in order for the insurer to escape liability. *Youell v. Grimes*, 217 F. Supp. 2d 1167, 1174 (D. Kan. 2002) (citing *Boone v. Lowry*, 657 P.2d 64 (Kan. Ct. App. 1983).

> The cooperation clause reads as follows:
>
>> The **Named Company Insureds** shall not admit liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for any Loss to which it has not consented. **The Named Company Insureds** agree that they shall not knowingly take any action which increases the Insurer's exposure for Loss under this Policy.

Continental alleges that MultiService breached the cooperation clause because it agreed to the Comdata settlement without prior written consent from Continental. Upon reviewing the record, the court finds that there are issues of material fact regarding whether MultiService breached the cooperation clause. Although Continental did not specifically withdraw its February 2006 consent to settle, it did change the conditions under which it was willing to settle. Whether Continental provided written consent to the final settlement is in dispute. Accordingly, MultiService's motion is denied.

**IV.     Defendant's Motion to Limit Testimony of Plaintiff's Rebuttal Expert Michael Conroy**

Since defendant's motion was originally filed, the parties have reached agreement on several issues and settled Counts II and IV of MultiService's counterclaims. Because the court did not rely on any evidence or argument regarding Mr. Conroy in ruling on the parties' summary

judgment motions (Docs. 139, 158, and 141) and the posture of the case has changed significantly, the court denies defendant's motion without prejudice. Defendant may file an updated motion to strike that addresses the remaining issues within 10 days of this order. Continental may reassert its argument that defendant's motion was untimely under the Scheduling Order.

**IT IS THEREFORE ORDERED** that Defendant MultiService Corporation's Second Motion for Partial Summary Judgment (Doc. 139) is denied.

**IT IS FURTHER ORDERED** that Plaintiff Continental Company's Cross-Motion for Partial Summary Judgment with Respect to Estoppel (Doc. 158) is denied as untimely.

**IT IS FURTHER ORDERED** that Defendant's Motion to Limit Testimony of Plaintiff's Rebuttal Expert Michael Conroy (Doc. 127) is denied without prejudice.

Dated this 23rd day of June 2009, at Kansas City, Kansas.

          **s/ Carlos Murguia**
          **CARLOS MURGUIA**
          **United States District Judge**