**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CONTINENTAL CASUALTY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2256-CM** |
| **MULTISERVICE CORPORATION,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Continental Casualty Company ("Continental") brings this action for declaratory judgment against defendant MultiService Corporation ("MultiService"). This matter is before the court on Plaintiff Continental Casualty Company's Motion for Partial Summary Judgment With Respect to the Duty to Indemnify (Doc. 141).

**I.    Factual Background**[1]

In December 2004, defendant MultiService provided credit card processing services for the aviation industry. Plaintiff Continental issued an insurance policy to MultiService for the period of August 1, 2004 through May 2, 2005 ("Policy"). The Policy contains a Single Limit of Liability of $3 million subject to a self-insured retention of $35,000. The Policy contains the following exclusion, as amended:

> The Insurer shall not be liable to pay any **Loss** under this Coverage part in connection with any **Claim** made against **Named Company** or any **Subsidiary**

---

[1]  The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

p.   based upon, directly or indirectly arising out of, or in any way
involving:

(1) charges of price fixing, restraint of trade, monopolization or
unfair trade; or

(2) any actual or alleged violation of:

(a) the Federal Trade Commission Act, the Sherman Act, the
Clayton Act, or any federal statutory provision regarding
anti-trust, monopoly, price fixing, price discrimination,
predatory pricing or restraint of trade; or

(b) any rules or regulations promulgated under or in connection
with the above statutes; or

(c) any similar provision of any state, federal or local statutory
law or common law;

On December 1, 2004, Comdata Network, Inc. ("Comdata") filed suit against MultiService

and PerfectStop Partners, L.P. ("PerfectStop") (the "Comdata Lawsuit"); Comdata filed an

Amended Complaint in January 2005.  In the Comdata Lawsuit, Comdata alleged a tortious

interference claim and antitrust claims against MultiService.  The Amended Complaint alleges that

Comdata and PerfectStop had agreed on terms of a business relationship by the Fall of 2004 and

made a joint appearance at an industry conference in October 2004.  The Amended Complaint

further alleges that

Multi Service became aware of the agreement between Comdata and
PerfectStop through the press release and the parties' joint presentation at
the NBAA convention. . . . [T]o preserve its monopoly in the aviation fuel
card and POS systems markets, Multi Service secretly entered into
discussions with PerfectStop before the conference had concluded. . . .
Multi Service repeatedly told PerfectStop that Multi Service controlled the
aviation fuel card market, and that rollout of BusinessLink was unlikely to
succeed due to the difficulties that Multi Service could create in the
marketplace. . . . Multi Service explained that it had already exercised its
influence with key vendors of FBO accounting software to prevent those
vendors from responding to requests that PerfectStop had made for

> integration, of its software functionality with the vendors' programs. . . .
> Multi Service demanded that PerfectStop abandon its transaction with
> Comdata, and allow Multi Service to acquire an interest in PerfectStop
> instead.
>
> . . .
>
> PerfectStop and Multi Service agreed that PerfectStop would withdraw
> from its agreement with Comdata and that instead Multi Service would
> acquire an interest in PerfectStop on terms substantially identical to those
> previously agreed to by Comdata and PerfectStop.  PerfectStop and Multi
> Service entered this agreement knowing that their actions violated the
> obligations owed by PerfectStop to Comdata.

(Doc. 149, Ex. A, ¶¶ 26, 27.)  Based on these, and other similar allegations, Comdata asserted a

Tortious Interference with Business Relations claim, alleging: (1) Comdata had an existing business

relationship with PerfectStop; (2) MultiService knew of the relationship between Comdata and

PerfectStop; (3) MultiService intended to cause the breach of the relationship between Comdata

and PerfectStop; (4) MultiService had an improper motive and employed improper means to cause

the breach of the relationship between Comdata and PerfectStop; and (5) Comdata has suffered

damages as a result of PerfectStop's tortious interference.  (Doc. 149, Ex. A, ¶¶ 55–59.)

The Comdata litigation was settled on June 12, 2006.  The settlement included a $1 million

payment from MultiService to Comdata.

## II.      Standards for Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores,

Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986)).

**III.    Discussion**[2]

Continental asserts that it is entitled to summary judgment on the issue of indemnity, arguing that Exclusion (p) of the Policy precludes coverage of the tortious inference claim.  As the insurer, Continental bears the burden to establish that Exclusion (p) precludes coverage of the tort claim.  *Upland Mut. Ins., Inc. v. Noel*, 519 P.2d 737, 741 (Kan. 1974).  To be enforced, policy exclusions must be specific and unambiguous.  *Rockgate Mgmt. Co. v. CGU Ins., Inc./PG Ins. Co.*, 88 P.3d 798, 802 (Kan. Ct. App. 2004); *see also Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1221 (Kan. 1998).  Such clauses require a strict and narrow construction, and unambiguous clauses must be given their literal meaning.  *Rockgate*, 88 P.3d at 802–03.

Continental argues that Exclusion (p) precludes coverage because the antitrust and tortious interference claims arise from the same alleged conduct.  Citing *Crist v. Hunan Palace, Inc.*, 89 P.3d 573 (Kan. 2004), *Marquis*, and *Upland*, MultiService argues that when determining whether a policy exclusion precludes coverage for a claim under Kansas law, it is the theory of liability—here, tortious inference—rather than the cause of the injury that governs coverage.  Continental contends that these cases are limited to the construction of automobile exclusions in the context of negligent entrustment, supervision, and hiring claims and maintains that there is no coverage because the antitrust and tortious interference claims arise from the same factual allegations.

In *Crist*, the Kansas Supreme Court solidified the rule pronounced in *Upland* and followed in *Marquis*—"the theory of liability rather than the cause of the accident governs coverage."  *Crist,* 89 P.3d at 577.  However, *Crist*, *Marquis*, and *Upland* involved automobile exclusions.  Prior to *Crist*, the Kansas courts did not always apply this rule in cases involving other kinds of policy

_____

[2]  The parties agree that Kansas substantive law applies to this matter.

-4-

exclusions. *State Farm Ins. Co. v. Gerrity*, 968 P.2d 270, 279 (Kan. Ct. App. 1998) ("[I]n ignoring the negligence claims made by the plaintiff in *First Financial Ins. Co. v. Bugg*, [962 P.2d 515, 526 (Kan. 1998)], our Supreme Court reasoned that theories of liability are irrelevant when injuries occur from intentional acts. Therefore, an appellate court should not look to the specific theories of liability alleged but to the underlying cause of the injuries."). The Kansas Court of Appeals did not "believe the Supreme Court intended for its decision in *Upland Mutual* to apply . . . to cases which do not involve exclusion clauses under homeowner's liability policies." *State Farm Mut. Auto. Ins. Co. v. Cummings*, 778 P.2d 370, 376 (Kan. Ct. App. 1989), *abrogated on other grounds by Cashman v. Cherry*, 13 P.3d 1265 (Kan. 2000).

The *Crist* court acknowledged that the Kansas Court of Appeals had, to some extent, disregarded the rule, but declined to overrule its prior precedent. 89 P.3d at 579–80. The court did not address whether the rule extended beyond or was limited to automobile exclusions or homeowner liability policies. Continental has not cited a post-*Crist* case in which the Kansas Courts have limited the *Upland* rule, and the court has found no authority for that position.[3] Furthermore, the cases Continental relies are distinguishable; they are either (1) decided prior to *Crist* or (2) apply the law of other jurisdictions. In light of the Kansas Supreme Court's discussion in *Crist*, in which it recognized that the *Upland* rule was not followed in cases involving other types of exclusion clauses but it declined to abandon or limit the rule, this court is compelled to follow *Upland*. Accordingly, this court finds that "'Kansas does not look to the underlying cause of the

---

[3] In *Conner v. Catastrophic Prop. Restoration, L.L.C.*, No. 97,226, 2007 WL 2695843 (Kan. Ct. App. Sept. 14, 2007), a case involving an asbestos exclusion, the Kansas Court of Appeals recognized the *Upland* rule but relied on the particular facts of the case to find that there was no distinction between the claims alleged and the claims set forth in the exclusion. The *Conner* court, however, emphasized that its "holding is narrow and limited to the specific facts and circumstances of the case." *Id.* at *5.

injury to determine coverage, but to the specific theory of liability.'" *Marquis*, 960 P.2d at 1221–23 (quoting *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456 (Kan. 1992)).  Thus, the court must determine whether the theory of liability alleged in the Comdata Lawsuit, tortious interference, is separate and distinct from the theories of liability excluded in Exclusion (p).

Exclusion (p) precludes coverage for claims based upon, directly or indirectly arising out of, or in any way involving (1) charges of price fixing, restraint of trade, monopolization or unfair trade or (2) any actual or alleged violation of antitrust laws, including the Sherman Act.  Under a strict and narrow construction, Exclusion (p) only applies to claims based upon charges or violations of antitrust laws.

Here, as in *Crist*, *Marquis*, and *Upland*, the alleged claim is separate and distinct from the excluded claims—claims involving charges and alleged violations of antitrust laws.  In its Amended Complaint, Comdata alleged that MultiService used its monopoly and market power to interfere with and prevent Comdata and PerfectStop from fulfilling their agreement.  These allegations relate to monopolization and unfair trade, but they do not depend on actual charges of price fixing, restraint of trade, monopolization, or unfair trade.  The tortious interference claim is an independent claim.  It does not rest on the success of the antitrust claims.  Each claim has its own, distinct elements.  To succeed on the tortious interference claim, Comdata did not need to prove MultiService violated antitrust laws or competed unfairly.  MultiService's alleged motivation—to maintain its monopoly—is irrelevant.  *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.5 (Tenn. 2002) (holding that to establish the element of improper motive the plaintiff must demonstrate that the defendant's predominant purpose was to injure the plaintiff).  Additionally, whether MultiService violated the antitrust laws is also irrelevant because Comdata could establish an improper interference without the alleged antitrust violations.  *Id.* (providing

examples of improper inference, including intimidation and bribery).

Accordingly, the court finds that Exclusion (p) does not exclude coverage for the tortious inference claim alleged in the Comdata Lawsuit.

**IT IS THEREFORE ORDERED** Plaintiff Continental Casualty Company's Motion for Partial Summary Judgment With Respect to the Duty to Indemnify (Doc. 141) is denied.

Dated this <u>23rd</u> day of June 2009, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**